[Cite as *State v. Cuyler*, 2025-Ohio-4461.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                     No. 113967

    v.                          :

DARYL D. CUYLER, JR.,                   :

    Defendant-Appellant.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED; REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 18, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681850-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Connor Davin, Assistant Prosecuting Attorney, *for appellee.*

Law Office of Timothy Farrell Sweeney and Timothy F. Sweeney, *for appellant.*

---

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Daryl D. Cuyler, Jr. appeals his convictions and sentence after pleading guilty to amended charges of strangulation, felonious assault with no firearm specifications, and criminal damaging or endangering. Upon a

thorough review of the transcript, we find that the trial court completely failed to comply with a portion of Crim.R. 11. We therefore reverse the judgment of conviction, vacate Cuyler's plea and sentence, and remand the case for further proceedings.

## I. Facts and Procedural History

{¶ 2} On or about May 26, 2023, Cuyler's ex-girlfriend, one of two victims in this case, went to his apartment to obtain her personal belongings. During the visit, Cuyler became angry and allegedly strangled her. Several hours later, Cuyler — now armed, according to the prosecution, with an AR-15 style assault rifle — confronted his ex-girlfriend and her father (the second victim) at a gas station, where he shot at their car. The shooting was partially captured on video. Neither victim sustained wounds, but the bullets shattered the windshield. The victims were able to flee in the vehicle and contact police.

{¶ 3} On June 13, 2023, the Cuyahoga County Grand Jury returned a five-count indictment charging Cuyler with the following offenses:

Count 1: Strangulation, a felony of the third degree, in violation of R.C. 2903.18(B)(2);

Count 2: Felonious assault (as to Cuyler's ex-girlfriend), a felony of the second degree, in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications;

Count 3: Felonious assault (as to the ex-girlfriend's father), a felony of the second degree, in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications;

Count 4: Discharge of a firearm on or near prohibited premises, a felony of the third degree, in violation of R.C. 2923.162(A)(3); and

Count 5: Criminal damaging or endangering, a misdemeanor of the first degree, in violation of R.C. 2909.06(A)(1).

{¶ 4} The trial court held several pretrials over the following months, with the trial date continued multiple times so the parties could engage in negotiations with the hope of resolving the case. The court called the case for trial on November 15, 2023. Cuyler appeared in court with retained counsel. The trial court indicated on the record that it had met with all counsel regarding a possible plea. It urged the parties to continue plea negotiations, directly addressing Cuyler to ensure he understood the risks and benefits of proceeding to trial versus agreeing to a plea. The trial court's remarks included the following:

> I've often thought how I might approach a situation if I were someone in your shoes. And I thought that I would start by first asking myself the honest question of, well, *what was my responsibility here*[?] Do I have any responsibility at all? *Maybe not what the State is accusing you of doing*, but do I have any responsibility at all?
>
> And if the answer to that is no, the State has got it wrong, I wasn't there, whatever the case may be, then I would rely upon my very good lawyer you have to sway the jury, and if they agree with me and we get the right outcome, well, good.
>
> And conversely, if the jury gets it wrong and perhaps if I end up with a prison sentence, at least I can look at myself in the mirror and know that I was honest with myself and the system got it wrong and oh, well.
>
> Conversely, if after that honest conversation with myself if the answer is, well, perhaps I could have done some things better or differently, *I do maybe have some responsibility here, maybe again not what the State is accusing me of doing but I have some responsibility here*, then I would rely upon my good lawyer like you have to give me the best deal, *accept my responsibility* and go from there, face whatever comes my way because of my actions in the matter.

(Emphasis added.) (Tr. 9-10.) The prosecuting attorney then described the proposed plea on the record (tr. 11.) after which the trial court again explained to Cuyler the possible ramifications of going to trial versus taking the offered plea.

{¶ 5} The trial court then took a recess to allow Cuyler to confer privately with his retained counsel. When the trial court went back on the record, the prosecutor again outlined the proposed plea. In short, Cuyler was offered a deal in which he would plead guilty to Count 1 as charged, guilty to Count 2 with the elimination of both firearm specifications but the addition of his ex-girlfriend's father as a second victim, and guilty to Count 5 as charged. The State would then nolle both Count 3, which also included firearm specifications, and Count 4.

{¶ 6} The transcript reflects that the trial court combined Cuyler's plea colloquy with that of a different defendant, Dav'Veon Edwards, who was entering a plea in an entirely unrelated case. The only overlap appeared to be that the State was represented in both cases by the same assistant prosecutor. The trial court addressed the defendants and their attorneys in turn. For example, it asked Cuyler's attorney whether the plea agreement "outlined by the government" was "consistent with [his] understanding and expectations[.]" (Tr. 26.) It then immediately addressed counsel for Edwards, prompting him with "same question?" (Tr. 26.) The trial court asked Cuyler's counsel if he received full discovery, then asked counsel for Edwards the same question. (Tr. 26-27.) When asked whether there was "a factual basis for the plea," Cuyler's counsel responded, "There is," and counsel for Edwards responded, "Yes." (Tr. 27.)

{¶ 7} The colloquy then began in earnest, with the trial court continuing to address these unrelated defendants together:

> THE COURT: So gentlemen, Mr. Cuyler, Mr. Edwards, when you come before me to entertain a change of plea like we're talking about doing, it's necessary that you and I each have a personal conversation back and forth about that. To that extent, if either one of you has a question of me about something that I say or perhaps a question I ask of you that you don't quite understand, let me know and I will clear it up for you.
>
> Likewise, if either one of you would like to speak to your lawyer about something privately, let me know and I will make sure that happens as well.
>
> Does that sounds like a plan, Mr. Cuyler?
>
> DEF. CUYLER: Yes.
>
> THE COURT: How about you, Mr. Edwards?
>
> DEF. EDWARDS: Yes.
>
> THE COURT: And, gentlemen, we're going to kind of go back and forth like that. I will first ask my questions of you, Mr. Cuyler, and then you, Mr. Edwards. All right?

(Tr. 28-29.) Cuyler responded "Yes, sir." (Tr. 29.) Edwards did not respond, but the trial court nevertheless continued to address them together, establishing their names, level of education, whether they were under the influence of mind-altering substances, their understanding of the proceedings, the absence of threats and promises, their decisions to plead guilty, and their satisfaction with their representation. (Tr. 29-31.)

{¶ 8} The trial court continued to address Cuyler and Edwards together while it explained their constitutional rights, soliciting responses from each of them in turn. (Tr. 32-34.)

{¶ 9} Before formally accepting Cuyler's plea, the trial court explained its ramifications. It reviewed the charges to confirm Cuyler's understanding of each count and ensured Cuyler understood that he would be pleading guilty to the various counts as charged or as amended:

> THE COURT: All right. Mr. Cuyler, let me just address you for a moment. And a lot of this is going to be respective to what you and I just talked about a few minutes ago, but it's my expectation that you will be *entering a guilty plea* first to Count 1 of your indictment *as charged*. As a felony of the third degree, it is captioned strangulation. *Do you understand that charge as it's been indicted?*
>
> DEF. CUYLER: *Yes, Your Honor.*
>
> THE COURT: I also *expect you to plead guilty* to Count 2 of the indictment as amended. The government is asking me to amend Count 2 of the indictment by deleting both of the firearm specifications and that also to adding the name of the victim who is named in Count 3. However, Count 2 would remain a charge of felonious assault and it is a felony of the second degree.
>
> *Do you understand that count, sir, as it's being amended?*
>
> DEF. CUYLER: *Yes, sir.*
>
> THE COURT: And finally, sir, I *expect you will plead guilty* to Count 5 of the indictment *as it is charged*. It is a count of criminal damaging or endangering. It is a misdemeanor of the first degree.
>
> *Do you understand that count, sir?*
>
> DEF. CUYLER: *Yes, Your Honor.*

(Emphasis added.) (Tr. 34-35.)

{¶ 10} The trial court specified in detail the maximum penalties associated with each charge, confirming at each juncture that Cuyler understood those maximum penalties. (Tr. 36-37.) It covered the Reagan Tokes Law, parole, postrelease control, the possibility of community control, and court costs,

confirming Cuyler's understanding. (Tr. 37-41.) The trial court confirmed that Cuyler did not have any further questions prior to his formal plea and that he did not wish to speak privately with his attorney again. (Tr. 41.)[1] The colloquy then included the following exchange:

> THE COURT: Gentlemen, let me ask you this: Do you . . . feel that you . . . have a complete understanding of all the rights you have, these rights that you will now be giving up or waiving? *Do you feel you understand what it is that you will be pleading to,* and *do you understand what your maximum possible sentence might be?* Do you have those understandings, Mr. Cuyler?
>
> DEF. CUYLER: *Yes, Your Honor.*
>
> THE COURT: Mr. Edwards?
>
> DEF. EDWARDS: Yes, sir.

(Emphasis added.) (Tr. 41-42.)

{¶ 11} The trial court proceeded to the pleas themselves. Edwards entered a plea of guilty to "attempted securing writings by deception," and the trial court accepted the plea, making "a finding of guilt accordingly." (Tr. 42-43.)

{¶ 12} After extended discussion of a sentencing date for Edwards and his understanding of continuing probation in different cases, the trial court once again turned its attention to Cuyler:

> [THE COURT]: Mr. Cuyler, sir, how do you plead then to Count 1 as it's charged, a charge of strangulation, a felony of the third degree, guilty or not guilty?
>
> DEF. CUYLER: Guilty.

---

[1] We note again that during this entire exchange, the trial court addressed Cuyler and Edwards together. (Tr. 35-42.)

THE COURT: How do you plead to Count 2 as amended by the deletion of the firearm specification and the inclusion of the named victim from Count 3, to a charge now still a felonious assault as a felony of the second degree, guilty or not guilty?

DEF. CUYLER: Guilty, Your Honor.

THE COURT: How do you plead to Count 5, a count of criminal damaging or endangering as a misdemeanor of the first degree, guilty or not guilty?

DEF. CUYLER: Guilty, Your Honor.

THE COURT: Thank you, sir.  I will accept your pleas of guilt, make a finding of guilty accordingly, grant the State's request to nolle and dismiss the remaining counts.

(Tr. 45-46.)

{¶ 13} The trial court ordered a presentence-investigation report and scheduled sentencing for December 14, 2023.  Sentencing proceeded as scheduled.  Cuyler's attorney spoke in mitigation, claiming that the shooting occurred only after Cuyler had been "threatened with a firearm."  (Tr. 51.)[2]  Cuyler apologized to his ex-girlfriend and her father.  He claimed her father had pointed a firearm at him earlier, "[w]hen they came to my house," but acknowledged that he should have contacted police rather than act impulsively.  (Tr. 60.)  The trial court sentenced Cuyler to a term of imprisonment.  On Count 2, the trial court sentenced Cuyler to a minimum of four years and an indefinite maximum of six years.  It sentenced Cuyler to 30 months on Count 1 and 180 days on Count 5.  The prison terms were to run

---

[2]  The prosecuting attorney later responded:  "I don't have any proof of the alleged threats that the second victim allegedly threatened the defendant, however, there's video of the defendant approaching the victims at a gas station with a long rifle, AR-15 style rifle, and putting two rounds through the passenger's side window through the windshield."  (Tr. 58.)

concurrent to each other. The trial court also ordered restitution for damage to the vehicle. (Tr. 62.) The trial court provided a limited explanation of postrelease control. *Id.*

{¶ 14} On May 23, 2024, Cuyler filed a motion for leave to file a delayed appeal. This court granted the motion on June 6, 2024.

## II. Analysis

{¶ 15} Cuyler presents four assignments of error for our review in his delayed appeal:

> **ASSIGNMENT OF ERROR 1:**
> Cuyler's guilty plea was not made knowingly, voluntarily, and intelligently, and was not conducted in compliance with Crim.R. 11, when the trial court failed to advise Cuyler that a guilty plea would be a complete admission of the charges and failed to inform Cuyler that the plea would result in the presumption of a prison sentence which he would be required to rebut at sentencing.
>
> **ASSIGNMENT OF ERROR 2:**
> The court's judgment entry of sentence fails to accurately reflect Cuyler's offense of conviction and sentence in amended Count 2; the court's judgment entry of sentence must be vacated and a corrected entry issued.
>
> **ASSIGNMENT OF ERROR 3:**
> The trial court's advisements of and notifications to Cuyler about both postrelease control and the Reagan Tokes law—which the court provided during the sentencing hearing and in the sentencing journal entry — were deficient and contrary to law, thereby mandating resentencing.
>
> **ASSIGNMENT OF ERROR 4:**
> S.B. 201 (Reagan Tokes) violates the Sixth Amendment right to trial by jury and Fourteenth Amendment due process and the associated provisions of the Ohio Constitution, Article I, Sections 5, 10, and 16.

{¶ 16} We find merit to Cuyler's first assignment of error and therefore vacate his guilty plea. Because all remaining assignments of error relate to sentencing, they are rendered moot by the resolution of the first assignment of error.

**III. Analysis**

{¶ 17} "To ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, a trial court must engage in colloquy with the defendant in accordance with Crim.R. 11(C)." *State v. Meadows*, 2022-Ohio-4513, ¶ 18 (8th Dist.), citing *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). In his first assignment of error, Cuyler argues that the trial court failed to comply with Crim.R. 11 when it did not inform him that his guilty plea was a complete admission of guilt and because it failed to inform him that the plea would result in the presumption of a prison sentence which he would be required to rebut at sentencing.

{¶ 18} Crim.R. 11(B)(1) provides that a "plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(C)(2)(b) requires that during the plea colloquy, the trial court do the following:

> Inform[] the defendant of and determine[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶ 19} Appellate review of the trial court's compliance with Crim.R. 11 involves the following analysis:

> "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?"

*State v. Ponomarenko*, 2024-Ohio-4789, ¶ 15 (8th Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 17. *See also State v. Fontanez*, 2024-Ohio-4579, ¶ 9 (8th Dist.).

{¶ 20} The focus on review is "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea[.]" *Dangler* at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *State v. Clark*, 2008-Ohio-3748, ¶ 26; *State v. Miller*, 2020-Ohio-1420, ¶ 19. A criminal defendant asking an appellate court to reverse a conviction must show that an error occurred in the trial court proceedings and that he was prejudiced by that error. *Dangler* at ¶ 13; *see State v. Perry*, 2004-Ohio-297, ¶ 14-15; *State v. Stewart*, 51 Ohio St.2d 86, 93 (1977); Crim.R. 52. The test for prejudice is "whether the plea would have otherwise been made." *State v. Nero*, 56 Ohio St. 3d 106, 108 (1990).

{¶ 21} There are two exceptions to the rule that a defendant must demonstrate prejudice. The first exception occurs when a trial court fails to explain constitutional rights that a defendant waives by entering a guilty plea. In that instance, there is a presumption that a plea was entered involuntarily and unknowingly, and a showing of prejudice is not required. *Dangler* at ¶ 14; *Clark* at ¶ 31. The second exception is a trial court's complete failure to comply with a portion of Crim.R. 11, in which case the defendant is likewise not required to show prejudice. *Dangler* at ¶ 15; *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. Crim.R. 11(C)(2)(b) involves a nonconstitutional right. *Ponomarenko* at ¶ 16.

{¶ 22} This court, sitting en banc, recently addressed whether a trial court's failure to inform a defendant that a guilty plea is a complete admission of the

defendant's guilt constitutes a complete failure to comply with a portion of Crim.R. 11 such that a showing of prejudice is not required to invalidate the plea. *Fontanez*, 2024-Ohio-4579 (8th Dist.).  In *Fontanez,* we discussed the common usage of the word "guilty" and held that it was apparent from the colloquy that the defendant admitted that he committed the acts in question when the trial court asked how he pled and he responded "guilty."  We also found that

> common sense dictates that [the defendant] understood that his guilty plea was an admission of his guilt.
>
> . . .
>
> [W]here a trial court does not explicitly state that a guilty plea constitutes a complete admission of guilt during a Crim.R. 11 colloquy but the court otherwise complies with the rule and the defendant does not assert actual innocence, we may presume that the defendant understood that his guilty plea was a complete admission of guilt.

*Fontanez* at ¶ 14, 20.[3]

---

[3] The Ohio Supreme Court determined a conflict exists between this Court's decision in *Fontanez*, *State v. Fox*, 2024-Ohio-349 (5th Dist.), and *State v. Dumas*, 2024-Ohio-2731 (2d Dist.).  01/22/2025 Case Announcements, 2025-Ohio-156.  *Fontanez* is pending before the Ohio Supreme Court on the following issue:

> Does a trial court completely fail to comply with Crim.R. 11(C)(2) so as to render a guilty plea invalid when it fails to explicitly state that [a] guilty plea constitutes a complete admission of guilt[] where the trial court otherwise complies with the requirements of Crim.R. 11(C)(2), the admission of guilt is obvious from the context of the plea colloquy, and the defendant does not assert actual innocence?

*Fontanez* is scheduled for oral argument before the Ohio Supreme Court on October 31, 2025.

{¶ 23} Cuyler recited the word "guilty" and did not assert actual innocence.[4] Upon a thorough review of the transcript, however, it is not apparent from the totality of the colloquy that Cuyler understood his guilty plea was a complete admission of guilt.

{¶ 24} We find *Fontanez* distinguishable for two intertwined reasons. First, in *Fontanez*, our review of the totality of the colloquy revealed that the trial court had inquired into whether the defendant "*committed the specific act charged* in each count to which he was pleading guilty." (Emphasis added.) *Fontanez* at ¶ 14. In *Fontanez*, the trial court read the indictment. *Id*. Here, by contrast, the trial court not only failed to read the full amended indictment, but essentially recited only the statutory names of each count — strangulation, felonious assault, and criminal damaging or endangering — without describing, in any fashion, the specific acts charged.

{¶ 25} Second, we find merit to Cuyler's argument that the trial court "*invited* Cuyler to believe a guilty plea was something less than a complete admission of guilt" and could instead "be envisioned as a way to accept responsibility for the situation." (Emphasis in original.) (Appellant's brief at p. 11 and 15.) Cuyler ties this argument

---

[4] At sentencing, Cuyler's attorney discussed the plea negotiations and made an oblique reference to "trying to fight the strangulation" charge. (Tr. 52.) In this context, we do not view this as an assertion of actual innocence. Indeed, in the very next sentence, Cuyler's attorney stated: "He takes full responsibility." *Id*. More importantly, the Ohio Supreme Court has made clear that in this context, any assertion of actual innocence must be made "at the time of [the] guilty plea," i.e., "at the colloquy." *State v. Jones*, 2007-Ohio-6093, ¶ 54.

to the trial court's suggestion, made on the record but prior to the formal plea colloquy, that in considering the State's plea offer he might reflect on whether he had "any responsibility at all[,]" even if it is "not what the State is accusing him of doing." (Tr. 9.) Standing alone, one could view this as a reference to the plea deal's reduced charges. Even giving the remarks the benefit of that interpretation, however, this made it all the more important that during the subsequent plea colloquy, the trial court recite the specific acts charged in each count of the amended indictment, as emphasized in *Fontanez*, 2024-Ohio-4579 (8th Dist.). Having framed Cuyler's plea as accepting some responsibility for his alleged wrongdoing, albeit "not what the State is accusing [him] of doing," the trial court erred in failing to recite the specific acts the State was *still* accusing Cuyler of committing in the amended indictment, i.e., the specific acts charged in each count to which he *would* be admitting guilt.

{¶ 26} This court recently distinguished *Fontanez* in *Cleveland v. Greene*, 2024-Ohio-4899 (8th Dist.). While that misdemeanor case involved less stringent colloquy requirements under Crim.R. 11(E), the court discussed *Fontanez* and ultimately vacated the defendant's plea, finding that the trial court "completely failed to inform Greene of the effect of a plea of guilty." *Id.* at ¶ 10. Greene was evidently confused at some points during the brief plea colloquy, an important factor in the decision to vacate the plea.[5] While the record in the present case does not

---

[5] Greene had first mistakenly replied "no contest" rather than "guilty" when asked how he plead. *Id.* at ¶ 10.

evidence the same level of confusion, the court in *Greene* noted that in contrast to *Fontanez*, "the factual basis for the plea was not placed on the record" and "it [was] not obvious from the context of the plea colloquy that the defendant understood the effect of a guilty plea." *Id.* at ¶ 10. Here, as in *Greene* and as discussed above, the trial court likewise did not place the factual basis for the plea on the record. We have already explained that this lapse must be viewed in light of the entire proceeding, including the trial court's remarks leading up to the plea, which referred to Cuyler taking only some responsibility for his actions, but "not what the State is accusing you of doing." These factors combined to introduce potential confusion into the proceedings, with the trial court implying that Cuyler could plead guilty to accept some responsibility for his actions but not completely admit guilt. We therefore cannot say that it is obvious from the context of the plea colloquy that Cuyler understood the effect of his plea of guilty. Indeed, the record reflects a somewhat hurried proceeding in which the trial court processed two defendants at the same time in entirely unrelated cases. Viewing the entirety of the plea colloquy, there was a complete failure to comply with a portion of Crim.R. 11(C), which relieves Cuyler of any burden to demonstrate prejudice. *Fontanez* at ¶ 26.

{¶ 27} Accordingly, Cuyler's first assignment of error is sustained. Because Cuyler's three remaining assignments of error pertain to his sentencing, they are rendered moot by our resolution of the first assignment of error.

**{¶ 28}** We reverse the trial court's judgment and vacate Cuyler's plea and sentence. The case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR