[Cite as *State v. Molina*, 2025-Ohio-4758.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                     No. 114849

    v.                                 :

SABRINA MOLINA,                         :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** October 16, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-685670-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alyssa Waite, Assistant Prosecuting Attorney, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Sabrina Molina ("Molina") appeals her convictions and claims the following errors:

> 1. The trial court erred by accepting appellant's guilty plea when it was not knowingly, intelligently, and voluntarily made.

2. The trial court erred by failing to conduct a sufficient inquiry into appellant's request for new counsel prior to her change of plea.

3. The trial court erred by denying appellant's motion to withdraw her guilty plea.

{¶ 2} After a careful review of the record, we find that the trial court completely failed to comply with Crim.R. 11(C)(2)(b), which requires the court to explain the effect of a guilty or no contest plea.  We, therefore, reverse the judgment of conviction, vacate Molina's plea and sentence, and remand the case to the trial court for further proceedings.

## I.  Facts and Procedural History

{¶ 3} Molina was charged with one count of aggravated robbery, in violation of R.C. 2911.01(A)(1); one count of robbery, in violation of R.C. 2911.02(A)(2); one count of theft, in violation of R.C. 2913.02(A)(1); three counts of assault, in violation of R.C. 2903.13(A); three counts of obstructing official business, in violation of R.C. 2921.31(A); and two counts of criminal damaging, in violation of R.C. 2909.06(A)(1).  The aggravated robbery and robbery charges included one- and three-year firearm specifications.

{¶ 4} The court called the case for trial on April 10, 2024.  Molina appeared for trial and expressed dissatisfaction with her assigned counsel.  She complained that her lawyer was not communicating with her and that when she asked about her case, she was "given the runaround." (Tr. 5.)  Her lawyer acknowledged that he had been preoccupied with an aggravated-murder trial but indicated that now that the defendant in the aggravated-murder case had pleaded guilty, he was available to

discuss Molina's case with her. Before doing so, however, the State described the evidence in its possession that placed Molina at the crime scene and documented her communications with her codefendant regarding the crimes she was accused of having committed. The trial court encouraged Molina to meet with counsel to review the evidence. The court stated:

> So, now is the best opportunity for you to have this conversation. If you're dissatisfied and I hear a reason to disquali — or to have him withdraw, then I'll consider whether you're indigent — sounds like you have a job — and I will decide whether another attorney should be appointed.

(Tr. 16.) Allowing Molina time to discuss her case with counsel, the court continued the trial to June 24, 2024.

{¶ 5} On June 24, 2024, the court again called the case for trial. A few days before trial, Molina's attorney had filed a motion to withdraw as counsel, stating that "Defendant Molina has told counsel that she wants new counsel and will not communicate with counsel." (Motion to withdraw filed June 20, 2024.) The court addressed the motion, and Molina indicated that she wanted a new lawyer appointed to defend her because she did not believe her presently appointed lawyer was preparing the case for an optimum resolution. (Tr. 23-24.) The court recounted the fact that there had been several pretrials in the case, that Molina's lawyer was an experienced criminal lawyer, and that Molina and her lawyer had several opportunities to discuss her case. (Tr. 24.) The court also noted that the case had previously been set for trial and had been continued, that Molina's case was again

set for trial, and that "[t]oday is not the day for you to ask for a new attorney." (Tr. 24.)

{¶ 6} Following a recess, the State advised the court that the parties had reached a plea agreement. Molina's codefendant, Artemous Roulette Sr., had just pleaded guilty and agreed to testify at Molina's trial. (Tr. 23, 65, and 69.) The prosecutor outlined the terms of the plea agreement on the record, and Molina's lawyer confirmed that Molina agreed to the delineated terms. Before proceeding further, the court addressed Molina:

> THE COURT: And, Miss Molina, have you understood what the prosecutor has said, what your attorney has agreed and is that also your understanding of the plea?
>
> THE DEFENDANT: Yes.

(Tr. 31.) Thereafter, the court engaged in a Crim.R. 11 plea colloquy wherein the court advised Molina of the nature of the charges, the maximum penalty involved, and the constitutional rights she would be waiving by virtue of her guilty pleas. (Tr. 34-43.) Molina indicated that she understood the court's advisements. However, the court did not explain the effect of a guilty plea. Nevertheless, Molina confirmed there were no threats or promises made to induce her guilty pleas and that she was not under the influence of any drugs, alcohol, or medication that would impair her judgment. (Tr. 32.)

{¶ 7} Following the plea colloquy, Molina pleaded guilty to one count of robbery with a one-year firearm specification, one count of aggravated theft, one count of assault on a peace officer, one count of criminal damaging, and two counts

of obstructing official business. The remaining counts and firearm specifications were nolled.

{¶ 8} On June 24, 2024, Molina filed a letter with the court, requesting a court date to withdraw her guilty pleas. The letter states, in relevant part:

> Dear [Judge], I am writing this letter to request a court date to change my plea back to not guilty. On Monday June 24, 2024, I was forced to enter a guilty plea without the knowledge of understanding my case and the consequences of the plea. I was not psychologically competent due to being off my mental health medication for a couple of months due to health reasons these couple months. I also told you that my lawyer has been incompetent and hasn't been able to investigate my case, provide me with any information pertaining to my case, he doesn't answer or return calls [and] he was and still is not ready to represent my case for trial. . . . [M]y lawyer . . . had me under the impression if I didn't accept the plea, I would not be able to go home and I had to make sure my kids were going to be okay. I told him several times I wanted to take my case to trial there in the lobby and he still didn't honor my wishes[.] [I]nstead he coerced me into changing my plea to guilty.

{¶ 9} On July 11, 2024, Molina failed to appear for a presentence-investigation appointment, and the trial court issued a warrant. On July 25, 2024, Molina appeared in court, and the court appointed new counsel to represent her. On October 21, 2024, Molina, through new counsel, filed a motion to withdraw her guilty pleas. In the motion, she reiterated that "she was told a number of times that if she did not accept the plea agreement she would go to prison for a very long time." Following a hearing, the trial court denied the motion.

{¶ 10} The trial court sentenced Molina to an indefinite sentence of eight to 12 years in prison on the robbery charge, as amended in Count 2, plus one year on the firearm specification for a term of 9 to 13 years. The court also sentenced Molina

to 12-month prison terms on the theft conviction and on each of the two obstructing-official-business convictions; 18-month prison terms on the two assault convictions; and 60 days and 90 days on each of the two criminal-damaging convictions. The court ordered all prison terms to be served concurrently for an aggregate prison term of 9 to 13 years in prison. This appeal followed.

## II. Law and Analysis

{¶ 11} In the first assignment of error, Molina argues she did not enter her guilty pleas knowingly, intelligently, and voluntarily because the trial court completely failed to explain the effect of a guilty plea.

{¶ 12} "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.), citing *State v. Stewart*, 51 Ohio St.2d 86 (1977). In a de novo review, we review the merits of the case independently, without any deference to the trial court. *Sosic v. Stephen Hovancsek & Assocs., Inc.,* 2021-Ohio-2592, ¶ 21 (8th Dist.).

{¶ 13} Crim.R. 11(C) outlines the procedures a trial court must follow when accepting guilty or no contest pleas. The purpose of Crim.R. 11(C) is "'to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty.'" *State v. Woodall*, 2016-Ohio-294, ¶ 12 (8th Dist.), quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). It also "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his [or her] rights and the consequences of his [or her] plea

and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).

{¶ 14} Ordinarily, when a defendant seeks to reverse his conviction on grounds that his or her plea was not knowingly, intelligently and voluntarily made, the defendant must demonstrate (1) an error in the proceedings, and (2) that the error caused prejudice to the defendant. *Dangler* at ¶ 13.

{¶ 15} There are, however, two exceptions applicable to convictions rendered following a guilty or no contest plea. The first occurs when "a trial court fails to explain the constitutional rights that the defendant waives by pleading guilty or no contest." *Id.* at ¶ 14. The second occurs if the trial court completely fails to comply with Crim.R. 11(C)'s requirement that it explain the nonconstitutional aspects of the plea proceedings. *Id.* at ¶ 15. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he [or she] demonstrates he [or she] was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, citing *Nero* at 108.

{¶ 16} In *Dangler*, the Ohio Supreme Court sought to simplify our review of the criminal-plea analysis by dispensing with the different tiers of compliance with Crim.R. 11(C), i.e., partial, substantial, or strict compliance. *Id.* at ¶ 17. Instead, the

Court identified the following questions to be asked when reviewing a trial court's Crim.R. 11(C) colloquy:

> (1) has the trial court complied with the relevant provision of the rule?

> (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? And

> (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17.

{¶ 17} In *Dangler*, the Ohio Supreme Court did not explicitly define what constitutes a "complete failure to comply" with Crim.R. 11. Nevertheless, the Court held that the trial court in that case did not completely fail to comply with its duty to explain the maximum potential penalties to Dangler even though it did not explain the in-person-verification requirements, community-notification provisions, and residency restrictions applicable to his sex-offender classification. *Id.* at ¶ 22-23. Although the applicable sex-offender registration was punitive, the Court found that the trial court did not completely fail to explain the maximum potential penalty because the trial court generally advised Dangler that he would be subject to registration requirements. *Id.* at ¶ 22-23.

{¶ 18} Molina contends the trial court completely failed to explain to her the effect of her guilty pleas. Crim.R. 11(B)(1) provides that the effect of a "plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(C)(2)(b) provides that during the plea colloquy, the trial court must inform "the defendant of and

determine[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence."

{¶ 19} Sitting en banc, we recently addressed the question of whether a trial court's failure to inform a defendant that a guilty plea is a complete admission of the defendant's guilt constitutes a complete failure to comply with Crim.R. 11(C)(2)(b) such that a showing of prejudice is not required to invalidate the plea in *State v. Fontanez*, 2024-Ohio-4579 (8th Dist.).

{¶ 20} In *Fontanez*, we held that a trial court does not completely fail to comply with Crim.R. 11(C)(2)(b), even though the court did not explicitly inform the defendant that his or her guilty plea is complete admission of guilt, if it is obvious from the context of the plea colloquy that the defendant understood the effect of his or her "guilty" plea. In *Fontanez*, the effect of the guilty pleas was unmistakable because the trial court inquired as to whether the defendant "committed the specific act charged in each count to which he was pleading guilty." *Id*. at ¶ 14. The trial court read the facts alleged in the indictment, asked Fontanez how he wished to plead to the specific allegations presented to him, and Fontanez replied "guilty." *Id*.

{¶ 21} We distinguished *Fontanez* in two recent cases wherein we held that where the factual basis for the plea is not placed on the record, the effect of the guilty plea is not obvious from the context of the plea colloquy and that we, therefore, cannot presume that the defendant understood that a guilty plea is a complete admission of guilt. *See State v. Cuyler*, 2025-Ohio-4461 (8th Dist.); *Cleveland v.*

*Greene*, 2024-Ohio-4899 (8th Dist.). In *Cuyler*, we noted that "the trial court not only failed to read the full amended indictment, but essentially recited only the statutory names of each count — strangulation, felonious assault, and criminal damaging or endangering — without describing, in any fashion, the specific acts charged." *Cuyler* at ¶ 24. In *Greene*, we vacated the defendant's guilty plea because "the factual basis for the plea was not placed on the record" and "it [was] not obvious from the context of the plea colloquy that the defendant understood the effect of a guilty plea." *Greene* at ¶ 10. In *Greene*, the defendant also expressed some confusion about whether he was pleading "guilty" or "no contest," and the trial court failed to explain the difference between the pleas, let alone the effect of a guilty plea. *Id.*

{¶ 22} The trial court never explained the effect of a guilty plea to Molina as required by Crim.R. 11(C)(2)(b). And, when taking Molina's plea, it did not place the factual basis for the plea on the record. As in *Cuyler*, the court merely recited the statutory name of each offense, the applicable code section, and the felony or misdemeanor level of each offense. Although Molina indicated she understood the offenses, there is nothing in the record to indicate that Molina understood that her guilty pleas constituted an admission of guilt with respect to each of the acts alleged in the indictment. Unless it is obvious from the record that the defendant understood that a guilty plea constitutes a complete admission of guilt, we cannot presume such an understanding. The complete failure to comply with Crim.R. 11(C)(2)(b) under these circumstances compels us to vacate Molina's plea

without a showing of prejudice. *Dangler*, 2020-Ohio-2765, ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 (holding that "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice").

**{¶ 23}** The first assignment of error is sustained.

**{¶ 24}** Having concluded that Molina's guilty pleas must be vacated, the remaining assignments of error, which also challenge the validity of her guilty pleas, are moot.

**{¶ 25}** We reverse the trial court's judgment, vacate Molina's plea and sentence, and remand the case to the trial court for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MICHAEL JOHN RYAN, J., CONCUR